**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| **CHERYL JONES, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )     **Civil Action No. 1:07-cv-01206 (EGS)** |
| | ) |
| **THE DISTRICT OF COLUMBIA, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

_____

## MOTION FOR CLASS CERTIFICATION

Plaintiffs move for the certification of a class of plaintiffs, pursuant to Fed. R. Civ.

P. 23(b)(2)(B) and Local Rule 23.1(b), defined as follows:

> All persons who have received, are receiving, or will receive disability
> compensation benefits under the District of Columbia's Disability
> Compensation Program, D.C. Code § 1-623.01, et. seq., or its
> predecessor, who were employed in a bargaining unit position at the time
> the person was injured and whose compensation benefits were not
> increased when increases in compensation were granted by the District of
> Columbia pursuant to D.C. Code §§ 1-611.05 and 1-611.06.

A memorandum of points and authorities and proposed order accompany this

motion.

**Local Rule 7(m) Conference with Opposing Counsel**

Counsel for plaintiffs and counsel for defendants have conferred regarding this

motion pursuant to Local Rule 7(m).  Although the parties are involved in substantial

settlement discussions, defendants decline at this time to consent to plaintiffs' motion

for class certification.

Respectfully submitted,

/s/ Wendy L. Kahn
Wendy L. Kahn (D.C. Bar No. 183855)
Jeffrey W. Burritt (D.C. Bar No. 493812)
Zwerdling, Paul, Kahn & Wolly, P.C.
1025 Connecticut Ave., N.W., Suite 712
Washington, D.C. 20036
Phone: (202) 857-5000
Fax: (202) 223-8417
Email: wlkahn@zwerdling.com
        Jburritt@zwerdling.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of October, 2007, I electronically filed the foregoing Motion for Class Certification with the Court using the CM/ECF system, which will send notification of such filing, via electronic mail, to attorney for the Defendants:

Daniel A. Rezneck
Senior Assistant Attorney General
For the District of Columbia
441 Fourth St., N.W., 6th Floor. So.
Washington, D.C. 20001.

/s/ Wendy L. Kahn
Wendy L. Kahn

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____ )
**CHERYL JONES, et al.,** )
)
**Plaintiffs,** )
)
**v.** )          **Civil Action No. 1:07-cv-01206 (EGS)**
)
**THE DISTRICT OF COLUMBIA, et al.,** )
)
**Defendants.** )
_____ )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

### I.       INTRODUCTION

Each plaintiff and member of the putative class is a current or former employee of the District of Columbia who sustained an injury (or injuries) in the performance of his or her job for which he or she was granted benefits under the District of Columbia's Disability Compensation Act, D.C. Code, § 1-623.01, et seq.  The District of Columbia has refused, and continues to refuse, to grant cost-of-living adjustments ("COLAs") to the amount of each putative class member's benefits solely because at the time each individual was injured, he or she was employed in a collective bargaining unit position. The District's refusal to award COLAs to these individuals violates D.C. Code § 1-623.41, as amended, as well as prior versions of that provision.  The District's policy also violates the Plaintiffs' rights guaranteed by the First Amendment of the U.S. Constitution, as well as the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, for which Plaintiffs seek redress under 42 U.S.C. § 1983.

This case involves several discrete questions of law – whether the District's refusal to award increases to the disability compensation benefits of potentially thousands of past, present, and future recipients of those benefits violates the Disability Compensation Act, the Equal Protection Clause of the U.S. Constitution, and/or the First Amendment of the U.S. Constitution. As such, this is precisely the type of case which should be heard and resolved as a class action.

## II.      STATUTORY FRAMEWORK OF THE DISABILITY COMPENSATION ACT

As set forth in more detail below, the District of Columbia enacted the Disability Compensation Act ("Act") in 1979 to provide compensation to District employees who suffer an injury in the performance of his or her duties that results in disability or death. D.C. Code, § 1-624.02 (1981) (now codified at § 1-623.02). Included in the Act was a provision granting periodic increases to the recipients' disability compensation. The initial provision, entitled "Cost-of-Living Adjustment of Compensation" and codified at § 1-624.41 (1981), provided the following formula by which the District was to calculate these increases:

> Each month the Mayor shall determine the present change in the price index. Effective the first day of the month, which begins after the price index change equals a rise of at least three (3) percent for three (3) consecutive months over the price index for the latest base month, compensation payable on account of disability or death which occurred more than one (1) year before the first day shall be increased by the percent rise in the price index (calculated on the highest level of the price index during the three (3) consecutive months) adjusted to the neatest one-tenth (1/10) of one (1) percent. For the purpose of this subsection, the item "price index" shall mean the Consumer Price Index for All Urban Consumers published by the Bureau of Labor Statistics, United States Department of Labor.

The City Council proposed amending this provision as part of the "Disability Compensation Adjustment Act of 1989," which was introduced as Bill 8-207. The

Council's Committee on Government Operations, to which the bill was referred, stated

the following with respect to this Cost-of-living adjustment ("COLA") provision:

> The Committee feels that D.C. Code section 1-624.41 as it currently exists is needlessly confusing and complicated, and Bill 8-207, as introduced, perpetuates that confusion and complication. There is no reason that adjustments to disability compensation need be calculated in such an intricate fashion. In addition, Bill 8-207 as introduced would perpetuate the unequal treatment of District employees who are on disability and those who are not on disability with respect to increases in compensation.
>
> The Committee believes that a simpler and more equitable way to calculate adjustments to disability compensation is to link the adjustments to the same percentage amount as the base salary increases granted to employees in the Career and Excepted Services not covered by collective bargaining. Those increases are generally granted on an annual basis, and are usually calculated to maintain parity with increases negotiated for District employees represented by labor unions. The Committee feels that such a linkage for adjustments to disability compensation makes sense, is fair and equitable, and is far simpler than the method currently used to adjust disability compensation.

Emphasis added. The amended provision, still entitled "Cost-of-living adjustment of compensation," read:

> On or after April 1, 1990, increases in compensation payable due to disability or death shall be in the same percentage amount and shall have the same effective date as any base salary increase granted, pursuant to Sections 1-611.05 and 1-611.06, to employees in the Career and Excepted Service not covered by collective bargaining. To be eligible for the increase, the disability or death of the employee must have occurred at least 1 year prior to the effective date of the increase.

D.C. Code § 1-623.41, D.C. Law 8-92, § 2, 37 DCR 778 (1990).[1]

---

[1] D.C. Code, § 1-611.05 ("Compensation System for Career and Excepted Services-- Periodic review"), inter alia, authorizes the Mayor to periodically review the compensation system applicable to Career and Excepted Service employees and propose adjustments thereto.

D.C. Code, § 1-611.06 ("Compensation System for Career and Excepted Services-- Review by the Council of the District of Columbia"), inter alia, authorizes the City Council to approve, revise, or take no action, on the Mayor's proposed adjustments to the compensation system or salary and pay schedules applicable to Career and Excepted Service employees.

In 2005, the City Council enacted D.C. Law 15-290, amending this provision once again, to read:

> On or after April 1, 1990, the Mayor shall award cost-of-living increases in compensation for disability or death whenever a cost-of-living increase is awarded pursuant to §§ 1-611.05 and 1-611.06.  The percentage amount and effective date of those increases shall be the same as for any increase granted under these sections. This section shall not apply to any collective bargaining agreements that are to the contrary.

D.C. Code § 1-623.41, D.C. Law 158-290, § 2(g), 52 DCR 1449 (2005).

Despite these provisions, the District has taken the position, as set forth in a May 17, 2006 response to a Freedom of Information Act request, that "Cost-of-Living increases are not awarded to Collective Bargaining Unit members unless their Collective Bargaining Agreements specifically provide for Cost-of-Living Increases." Exhibit 1 (attachments to FOIA response omitted).  Pursuant to this policy, the District has refused to award COLAs to the benefits of each Plaintiff, and upon information and belief has refused to award COLAs to the benefits of the proposed class members, despite awarding several COLAs pursuant to D.C. Code § 1-611.06 in recent years, including a 2.5% increase effective October 5, 2003,[2] a 3.5% increase effective July 10, 2005,[3] a 4% increase effective October 2, 2005,[4] a 3% increase effective April 2, 2006,[5] and a 3% increase effective October 1, 2006.[6]  On September 17, 2007, Proposed Resolution 17-0442 was introduced in the District of Columbia City Council, which, if

[2] Exhibit 2, D.C. Resolution 15-171.

[3] Exhibit 3, D.C. Resolution 16-210 (salary tables attached to Resolution omitted).

[4] Exhibit 4, D.C. Resolution 16-322.

[5] Exhibit 5, D.C. Resolution 16-703 (salary tables attached to Resolution omitted).

[6] Exhibit 5.

enacted, would award most non-union employees a 3.25% increase for fiscal year 2008.[7]

### III.    ARGUMENT

Rule 23 of the Federal Rules of Civil Procedure allows one or more individuals to file suit on behalf of a class by establishing (1) that a class exists; (2) that the four prerequisites to a class action – numerosity, commonality, typicality, and adequacy of representation – are present; and (3) that a class action is maintainable under one of the subsections of Rule 23(b).  Aliotta v. Gruenberg, 237 F.R.D. 4 (D.D.C. 2006); McReynolds v. Sodexho, 208 F.R.D. 428 (D.D.C. 2002).  With respect to each requirement, Plaintiffs bear the burden of establishing that there is a "reasonable basis for crediting [their] assertion[s]."  DL v. District of Columbia, 237 F.R.D. 319, 321 (D.D.C. 2006) (citing Wagner v. Taylor, 836 F.2d at 578, 587 n. 57 (D.C.Cir.1987); and McCarthy v. Kleindienst,741 F.2d 1406, 1414, n. 9 (D.C.Cir.1984)).  Plaintiffs in the instant proceeding can readily establish each of these prerequisites, thus warranting certification of the proposed class.

### A.    A Class Exists.

Rule 23(a) provides that "[o]ne or more members of a class may sue or be sued...."  Inherent in this Rule is the requirement that a class, in fact, exists.  Accordingly, courts routinely require that plaintiffs meet the "common-sense requirement" of establishing "that the general outlines of the membership of the class are determinable at the outset of the litigation."  See Bynum v. District of Columbia, 214 F.R.D. 27 (D.D.C. 2003).  This is not, however, designed to be a particularly stringent

---

[7] Exhibit 6, D.C. Proposed Resolution 17-442 (salary tables attached to Proposed Resolution omitted).

test.  Id.

The putative class here is narrowly drawn and sufficiently definite to allow the

court to determine whether a particular individual is a member of the class.  Pigford v.

Glickman, 182 F.R.D. 341, 346 (D.D.C.1998)).  The proposed class is defined as:

> All persons who have received, are receiving, or will receive disability
> compensation benefits under the District of Columbia's Disability
> Compensation Program, D.C. Code § 1-623.01, et. seq., or its
> predecessor, who were employed in a bargaining unit position at the time
> the person was injured and whose compensation benefits were not
> increased when increases in compensation were granted by the District of
> Columbia pursuant to D.C. Code §§ 1-611.05 and 1-611.06.

An individual will therefore be included in the proposed class if he or she (1)

received, is receiving, or will receive disability compensation benefits  under the

District of Columbia's disability compensation program; and (2) was employed by

the District of Columbia in a collective bargaining unit position at the time he or

she suffered the injury or injuries resulting in his or her receipt of disability

compensation benefits. The Court should find that this readily-determinable class

exists.

## B.    The Class Meets the Prerequisites of FRCP 23(a).

Once it is determined that a class exists, plaintiffs bear the burden of

establishing the class meets the prerequisites set forth in Rule 23(a).  These

prerequisites are established below.

### 1.    Numerosity – Joinder of all members is impracticable

Rule 23(a)(1) requires that "the class is so numerous that joinder of all

members is impracticable."  This Court has repeatedly held that "plaintiffs need

not provide the exact number of potential class members."  Bynum v. District of

Columbia, 214 F.R.D. 27, 33 (D.D.C. 2003); Pigford v. Glickman, 182 F.R.D.

341, 347 (D.D.C. 1998).  "So long as there is a reasonable basis for the estimate

provided, the numerosity requirement can be satisfied without precise numbers."

Kifafi v. Hilton Hotels Retirement Plan, 189 F.R.D. 174, 176 (D.D.C. 1999).  A

potential class of 40 members has been generally recognized as sufficient to

meet the numerosity threshold.  Taylor v. District of Columbia Water and Sewer

Authority, 241 F.R.D. 33, 37 (D.D.C.  2007) (citing  Thomas v. Christopher, 169

F.R.D. 224, 237 (D.D.C. 1996)); see also Committee of Blind Vendors v. District

of Columbia, 695 F.Supp. 1234, 1242 (D.D.C.1988) (63 class members satisfy

numerosity requirement); Sperling v. Donovan, 104 F.R.D. 4, 7 (D.D.C.1984) (46

class members satisfy numerosity requirement).

　　　　Plaintiffs estimate that the potential class in this case consists of, at

minimum, several hundred individuals who either have received disability

compensation in the past, currently receive disability compensation, or may

receive disability compensation in the future.  By letter dated July 28, 2006, the

District of Columbia's Office of Risk Management ("ORM") responded to a

Freedom Of Information Act request for the number of disability compensation

recipients as follows:

> In 2004, there were sixty-nine (69) divisions across twenty-seven (27)
> different departments and agencies, and six hundred thirty-two (**632**)
> individuals who received disability compensation.  In 2005, there were
> seventy-two (72) divisions across thirty-four (34) different departments
> and agencies, and seven hundred six (**706**) individuals who received
> disability compensation.  And in 2006 to date, there are seventy-five (75)
> divisions across thirty-four (34) different departments and agencies, and
> five hundred twenty-eight (**528**) individuals who have or are currently
> receiving disability compensation.

Exhibit 7 (attachments to FOIA response omitted).

　　　　It is believed that the majority of all District employees are in positions within

collective bargaining units.  In an email dated December 11, 2006, the District of

Columbia's Office of Personnel's Public Information Officer, Michael Rupert, reported

that not including the approximately 12,000 DC Public Schools employees,

approximately 50% of the District's remaining 21,000 employees are in various

collective bargaining units.  See Exhibit 8 (erroneously addressing Mr. Burritt as Mr.

Zwerdling).  In a report dated May 7, 1999, the Office of the District of Columbia Auditor

sets this number considerably higher, finding that "[a]s of March 23, 1999, 73 percent of

the District government's workforce belonged to a union."[8]  Regardless of whether the

number of represented employees is 50% or 73%, it is reasonable to assume that a

similar percentage rate would apply to disability compensation recipients -- i.e., if 73%

of the District's employees are covered by collective bargaining agreement,

approximately 73% of all disability compensation recipients were covered by collective

bargaining agreements when they were each injured.

　　　　While these estimates admittedly lack precision, there is a reasonable basis that

the potential class far exceeds the generally recognized numerosity threshold of 40

class members.  See e.g., Taylor v. District of Columbia Water and Sewer Authority,

241 F.R.D. 33, 37 (D.D.C.  2007).  It would therefore be impracticable to name each

individual class member as a plaintiff, satisfying the requirement of Rule 23(a)(1).  See

Bynum v. District of Columbia, 214 F.R.D. 27, 32  (D.D.C. 2003) (citing Consolidated

Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.1995); and Cox v. Am. Cast

Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986).

---

[8] Office of the District of Columbia Auditor, *Analysis of the Managed Competition Initiative as Presented in the FY 2000 Proposed Operating Budget and Financial Plan* (May 7, 1999) <http://74.93.219.35/frames/DCA/Reports/DCA899%20Managed%20Competition%20Initiative. pdf>.

### 2. There are questions of law and fact common to the class

Rule 23(a)(2) requires that Plaintiffs establish "there are questions of law or fact common to the class." This Court recently summarized the "commonality" requirement as follows:

> Commonality requires that the plaintiff raise claims which rest on "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). This rule does not require that "every issue of law or fact be the same for each class member." Bynum v. District of Columbia, 217 F.R.D. 43, 46 (D.D.C.2003). Rather, "[t]he commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." Coleman v. Pension Benefit Guar. Corp., 196 F.R.D. 193, 198 (D.D.C.2000) (internal quotation marks omitted). Because the commonality requirement may be satisfied by a single common issue, courts have noted that it is "often easily met." In re Vitamins Antitrust Litig., 209 F.R.D. 251, 259 (D.D.C.2002). Additionally, proposed class actions seeking injunctive and declaratory relief, such as this one, "by their very nature" present common questions of law and fact. 7A Wright, Miller & Kane, Federal Practice and Procedure § 1763 (3d. ed.2005).

Taylor, 241 F.R.D. at 37.

The facts in this case are undisputed and the relevant questions of law being presented are common to all prospective class members, thus meeting this requirement. By definition, each prospective class member (1) has received, continues to receive, or will receive, disability compensation, as provided by the District of Columbia Disability Compensation Act, and (2) was employed by the District in a position covered by a collective bargaining agreement at the time he or she was injured. The District has adopted a policy, as acknowledged in a May 17, 2006 response to a FOIA request, that "Cost-of-Living increases are not awarded to Collective Bargaining Unit Members unless their Collective Bargaining Agreements specifically provide for Cost-of-Living Increases." Exhibit 1. This case therefore turns on several questions of law that are common to all class members, namely whether the District's policy violates

D.C. Code, § 1-623.41, as amended and prior to the 2005 amendment, violates the

Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, and/or

violates the First Amendment to the U.S. Constitution.  Plaintiffs have therefore satisfied

the commonality requirement of Rule 23(a)(2).

> **3.    The claims of the plaintiffs are typical of the claims of the class.**

Rule 23(a)(3) requires the plaintiffs establish that their claims are typical of the

claims of the class.  This Court summarized the "typicality" requirement as follows:

> [T]the purpose of the typicality requirement is to ensure that the claims of
> the representative and absent class members are sufficiently similar so
> that the representatives' acts are also acts on behalf of, and safeguard the
> interests of, the class.  Littlewolf v. Hodel, 681 F.Supp. 929, 935
> (D.D.C.1988) (citation omitted).  A plaintiff's claim is typical if it arises from
> the same event or practice or course of conduct that gives rise to a claim
> of another class member's where his or her claims are based on the same
> legal theory.  Stewart v. Rubin, 948 F.Supp. 1077, 1088 (D.D.C.1996),
> aff'd, 124 F.3d 1309, 1997 WL 369455 (D.C.Cir.1997).  The requirement
> has been liberally construed by courts.  See In re Vitamins Antitrust Litig.,
> 209 F.R.D. 251, 260 (D.D.C.2002) (citing cases).

Bynum, 214 F.R.D. at 34 (internal quotations omitted).  The Supreme Court has found

that the typicality and commonality requirements "tend to merge."  General Tel. Co. of

the Southwest v. Falcon, 457 U.S. 147, 158 n. 13 (1982).

As discussed under the commonality prong, the claims of all prospective class

members turn on the legal theory that the District's policy of denying COLAs to the

disability compensation benefits of the class members violates the Disability

Compensation Act as well as the Equal Protection Clause of the Fourteenth

Amendment to the U.S. Constitution, and the First Amendment to the U.S. Constitution.

In seeking declaratory and injunctive relief from Defendants' violation of the Act, as well

as compensation for the lost value of the COLAs wrongfully withheld, Plaintiffs

prospective class members will safeguard the identical interests of the prospective

class members.

### 4. Plaintiffs will fairly and adequately protect the interests of the class.

Rule 23(a)(4) requires that the plaintiffs establish they "will fairly and adequately

protect the interests of the class."  To meet this requirement, plaintiffs must establish

that they have no conflicting interests to the unnamed class members, and that they are

able "to vigorously prosecute the interest of the class through qualified counsel."

Aliotta, 237 F.R.D. at 11-12 (citing Twelve John Does v. Dist. of Columbia, 117 F.3d

571, 575 (D.C.Cir.1997)).  Plaintiffs can meet both requirements.

There is no conflict of interest among the class members.  Plaintiffs seek

identical relief for all class members, with the only difference being that class members

would be entitled to different compensatory damages because COLAs are based on a

percentage of each recipient's benefits, which themselves are based on each

recipient's earnings at the time she was injured.

Plaintiffs' counsel is qualified to prosecute this matter.  Ms. Kahn has practiced

law since 1973, first in the general counsel's office of the American Federation of State,

County, and Municipal employees, and then as an associate and then partner in the law

firm presently named Zwerdling, Paul, Kahn & Wolly, P.C.  See Declaration of Wendy

L. Kahn, Exhibit 9).  She, Mr. Burritt, and the other members of the firm, specialize in

the practice of labor and employment law.

Ms. Kahn graduated from the New York University School of Law in 1973.  She

is admitted to practice in numerous federal courts, including the United States Supreme

Court, and the United States Courts of Appeals for the District of Columbia, as well as

the Fourth, Fifth, Sixth, Ninth Circuits, and numerous federal district courts, including in

the District of Columbia and Maryland.  She has been admitted to practice before the

District of Columbia Court of Appeals and the Maryland Court of Appeals.

Ms. Kahn has served as counsel of record in a number of cases filed as class

actions: Bowman v. Stumbo, 735 F.2d 192 (6th Cir. 1984); Bergmann, et al. v.

University of Maryland, C.A. Nos. H85-446 and H86-445 (D.Md.); Lyng v. International

Union, UAW, 485 U.S. 360 (1988), rev'g 651 F.Supp. 855 (D.D.C. 1986); UAW v.

Brock, C.A. 86-0300 (D.D.C.); Baker, et al. v. Reich, C.A. 95-1262 (D.D.C.).  She

served as counsel for numerous individual class members in the relief aspects of

Chewning v. Seamans, 471 F.Supp. 767 (D.D.C. 1979), 26 FEP Cases 731 (D.D.C.

1979), 28 FEP Cases 1735 (D.D.C. 1980); and, on remand from the D.C. Circuit,

served as counsel for the ten (10) employees allegedly fired by Chief Financial Officer

Anthony Williams for their union activity in District Council 20, et al. v. District of

Columbia, et al., C.A. 1:97-cv-00185 (D.D.C.).  Ms. Kahn has also served as lead

counsel representing D.C. public employees, as well as unions representing D.C. public

employees, in federal and local litigation, before administrative bodies including the

District of Columbia Public Employee Labor Relations Board, and in arbitration.  Ms.

Kahn is the past union and employee co-chair of the Committee on State and Local

Government Bargaining and Employment Law of the ABA's Section on Labor and

Employment Law (LEL) and is currently a member of the Council of the LEL Section,

and was inducted as a fellow of the College of Labor and Employment Law, Inc., in

2003.

**C.    This Action Meets the Prerequisites of Rule 23(b)(2).**

After establishing the existence of the prerequisites set forth in Rule 23(a),

Plaintiffs must demonstrate that the case satisfies the requirements of one of the subsections of Rule 23(b).  Plaintiffs maintain that the most appropriate provision under which to certify the proposed class is Rule 23(b)(2), which requires that:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

In order to certify a class action under Rule 23(b)(2), Plaintiffs must therefore show (1) that defendant engaged in conduct "generally applicable to the class," and (2) that Plaintiffs seek "final injunctive or corresponding declaratory relief."  Rule 23(b)(2); see also 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §1775 (3d ed.2005).

Plaintiffs have established the first portion of this standard through Defendants' acknowledgment that "Cost-of-Living increases are not awarded to Collective Bargaining Unit members unless their Collective Bargaining Agreements specifically provide for Cost-of-Living Increases."  Because the class members are limited to individuals who were employed in collective bargaining unit positions at the time of their injury, this policy is applicable to all members of the class.  The fact that Plaintiffs seek to challenge a generally applicable policy of the District exceeds the requirements of Rule 23(b)(2), as made clear by this Court in Bynum, 214 F.R.D. at 37.  There, plaintiffs sought to certify a class of past, present, and future inmates in the District of Columbia's Department of Corrections system, in order to challenge the District's practice of detaining inmates beyond their release dates.  With respect to the requirement that Plaintiffs show that the District "acted or refused to act on grounds generally applicable to the class" under Rule 23(b)(2), the Court found:

> Defendant [District of Columbia] argues that because it has no policy of detaining inmates after their scheduled release dates, and because the circumstances of each alleged over detention vary, plaintiff cannot demonstrate that its conduct is generally applicable to the class.  But the courts have never required such a demonstration to turn on whether the party opposing the class has adopted such a formal policy.  Rather, it is enough to show that a defendant "has acted in a consistent manner toward members of the class so that his actions may be viewed as part of a pattern of activity.

Id. (quoting 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §  1775 (2d ed.1986)).  The District's acknowledgment that it has adopted a policy of denying COLAs to the potential class members, which Plaintiffs now challenge, thus easily meets the requirement of Rule 23(b)(2).

Plaintiffs also meet the requirement of Rule 23(b)(2) that the appropriate form of relief is "final injunctive relief or corresponding declaratory relief with respect to the class as a whole" in order to remedy Defendants' violations of the Plaintiff's rights under the Disability Compensation Act,  the Equal Protection Clause of the U.S. Constitution, and the First Amendment of the U.S. Constitution.  Although Plaintiffs also seek monetary damages in the amount of the COLAs each prospective class member would have received had the District not committed these violations, these damages are merely ancillary to the equitable relief sought.  This is manifested in the fact that any monetary relief due to prospective class members is dependent upon, and therefore "flows from[,] the request for a declaratory judgment."  Coleman v. Pension Benefit Guaranty Corp., 196 F.R.D. 193, 199 (D.D.C. 2000).  As such, the monetary relief sought does not "predominate" over the equitable forms of relief requested.  See DL v. District of Columbia, 237 F.R.D. at 324 (citing Eubanks v. Billington, 110 F.3d 87, 92 (D.C.Cir.1997)).

This is further evidenced by the fact that calculating any monetary damages due each class member would be a straightforward "mechanical task."  See Does I through III v. District of Columbia, 2006 WL 2864483 (D.D.C., Oct. 5, 2006) ("If the calculation of the damage claims were a mechanical task, the presence of individualized claims would not be a barrier to class certification.").  Here, but for the District's policy of denying COLAs to the prospective class members, those individuals would have received COLAs "whenever a cost-of-living increase [was] awarded pursuant to §§ 1-611.05 and 1-611.06."  D.C. Code § 1-623.41.  Because COLAs were awarded on specific dates, as set forth supra at 4-5, footnotes 2-7, comparing those dates to the dates each class member received benefits will allow for the simple calculation of the monetary damages due.  These calculations would not create a conflict of interest among the class members or otherwise erode the cohesiveness of the class, as was the Court's concern in Eubanks v. Billington, 110 F.3d 87, 96 (D.C.Cir.1997).

## IV.    CONCLUSION

Plaintiffs have established that a class exists consisting of a large number of individuals who have received, are receiving, or will receive disability compensation benefits and have been denied increases to the amount of their benefits based solely on the fact that each individual was employed by the District in a collective bargaining unit position at the time he or she suffered the on the job injury that resulted in the receipt of disability compensation.  Because this case involves common questions of law that apply equally to each prospective class member, the remedy for which is

injunctive and declaratory relief, this case should be certified as a class action pursuant

to Rule 23(b)(2).

Respectfully submitted,

/s/ Wendy L. Kahn
Wendy L. Kahn (D.C. Bar No. 183855)
Jeffrey W. Burritt (D.C. Bar No. 493812)
Zwerdling, Paul, Kahn & Wolly, P.C.
1025 Connecticut Ave., N.W., Suite 712
Washington, D.C. 20036
Phone: (202) 857-5000
Fax: (202) 223-8417
Email: wlkahn@zwerdling.com
        Jburritt@zwerdling.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of October, 2007, I electronically filed the foregoing Memorandum of Points and Authorities in Support of Motion for Class Certification with the Court using the CM/ECF system, which will send notification of such filing, via electronic mail, to counsel for the Defendants:

Daniel A. Rezneck
Senior Assistant Attorney General
For the District of Columbia
441 Fourth St., N.W., 6th Floor. So.
Washington, D.C. 20001.

 /s/ Wendy L. Kahn
Wendy L. Kahn

# EXHIBIT 1



**Government of the District of Columbia**
**Office of Risk Management**
**Risk Financing Division**

Kelly Valentine –
Interim Chief Risk Officer

May 17, 2006

Cynthia Perry
AFSCME
729 15th Street, NW, Suite 700
Washington, DC 20005

### VIA FACSIMILE & FIRST CLASS MAIL

RE:    Freedom of Information Act Request Seeking Information Pertaining to Disability
Compensation Program—FOIA 04-2606

Dear Ms. Perry:

I received your request, dated April 26, 2006, pursuant to the District of Columbia Freedom of
Information Act ("FOIA"), wherein you requested copies of all documents, issued or produced
between January 1, 1990 and the present, including but not limited to statutes, regulations, policy
statements, policy directives, memoranda, handbooks, and pamphlets, that address or describe
whether or not recipients of benefits under the District of Columbia's Disability Compensation
program who were employed in bargaining unit positions at the time they became disabled, are
entitled to cost-of-living adjustments. This request covers documents generated during the
period the Office of Risk Management has had responsibility administering the D.C. Disability
Compensation Program.

The District of Columbia Office of Risk Management's Disability Compensation Program has
relied upon the D.C. Code regarding bargaining unit members' entitlement to cost-of-living
increases. Specifically, I direct your attention to:

**Disability Compensation Effective Administration Amendment Act of 2004 Section2. The
District of Columbia Government Merit Personnel Act of 1978, effective March 3, 1979
(D.C. Law 2-139; D.C. Official Code Section 1-623.01 et seq.) is amended as follows:**

**(g) Section 2341 (D.C. Official Code Section 1-623.41) is amended as follows:**

"On or after April 1, 1990, the Mayor shall award cost-of-living increase in compensation or
disability or death whenever a cost-of-living increase is awarded pursuant to Sections 1105 and
1106. The percentage amount and effective date of such increases shall be the same as for any
increase granted under these sections. This section shall not apply to any collective bargaining
agreements that are to the contrary."

**District of Columbia Official Code 2001 Edition**
**Division 1. Government of District,**
**Title 1. Government Organization, Chapter 6, Merit Personnel System,**
**Section 1-623.41 Cost-of-living adjustment of compensation,**

"On or after April 1, 1990, increases in compensation payable due to disability or death shall be in the same percentage amount and shall have the same effective date as any base salary increase granted, pursuant to Section 1-611.05 and 1.611.06, to employees in the Career and Excepted Services not covered by collective bargaining.   To be eligible for the increase, the disability or death of the employee must have occurred at least 1 year prior to the effective date of the increase."

Attached are copies of these provisions for your review.  Please note the legislative history of the code dating back to 1973 Edition, Section 1-353.41.  In essence, Cost-of-Living increases are not awarded to Collective Bargaining Unit Members unless their Collective Bargaining Agreements specifically provide for Cost-of-Living Increases.

If you deem any portion of this letter to constitute a denial of your FOIA request, you have the right to appeal to the Mayor or to seek immediate judicial review in the District of Columbia Superior Court.  An appeal to the Mayor shall be in writing, and shall include (1) a statement of the circumstances, reasons or arguments advanced in support of disclosure, and (2) a copy of this letter.  If you have any questions, please contact the undersigned at (202) 727-8600.

Sincerely,

Mia Powell Liley
Freedom of Information Act Officer
Manager, Settlement and Judgments

Cc:     Karen Sheppard, DCORM
        Nadia Pillay, EOM

G:\FOIA Requests\Cynthia Perry FOIA Response 5.17.06. doc

**EXHIBIT 2**

**ENROLLED ORIGINAL**

A RESOLUTION

<u>15-171</u>

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

<u>July 8, 2003</u>

To approve, on an emergency basis, the proposed compensation system changes submitted by the Mayor for certain Career Service, Excepted Service, and Management Supervisory Service employees not covered by collective bargaining.

RESOLVED, BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this resolution may be cited as the "Career Service, Excepted Service, and Management Supervisory Service Non-Union Employees Compensation System Changes Emergency Approval Resolution of 2003".

Sec. 2. (a)  Pursuant to sections 1105 and 1106 of the District of Columbia Government Comprehensive Merit Personnel Act of 1978, effective March 3, 1979 (D.C. Law 2-139; D.C. Official Code §§ 1-611.05 and 1-611.06), the Council approves the proposed compensation system changes recommended by the Mayor to provide for an increase of 2.5% to the salary schedules for certain Career Service, Excepted Service, and Management Supervisory Service employees not covered by collective bargaining ("covered employees").

(b)  The proposed compensation system changes shall not be applicable to employees of the District of Columbia Board of Education or the Board of Trustees of the University of the District of Columbia.

(c)  The proposed compensation system changes shall only be applicable to Career Service and Excepted Service employees who, on the effective date of this resolution, are at grade levels DS-15 or equivalent and below and Management Supervisory Service employees who, on the effective date of this resolution, are at grade levels MS-14 or equivalent and below.

Sec. 3.  The schedules for covered employees referred to in section 2 are approved as follows:

1

**ENROLLED ORIGINAL**

Sec. 4.  Applicability.

The compensation system changes enumerated in section 3 of this resolution shall be effective on October 5, 2003.                                           .

Sec. 5.  Fiscal impact statement.

The Council adopts the attached fiscal impact statement provided by the Chief Financial Officer as the fiscal impact statement required by section 602(c)(3) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(3)).

Sec. 6.  The Secretary to the Council shall transmit a copy of this resolution, upon its adoption, to the Mayor.

Sec. 7.  This resolution shall take effect immediately.

**EXHIBIT 3**

**ENROLLED ORIGINAL**

A RESOLUTION

<u>16-210</u>

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

<u>June 21, 2005</u>

To approve the proposed compensation system changes submitted by the Mayor for certain Career Service, Management Supervisory Service, and Excepted Service employees not covered by collective bargaining.

RESOLVED, BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this resolution may be cited as the "Career Service, Management Supervisory Service, and Excepted Service Non-Union Employees Compensation System Changes Approval Resolution of 2005".

Sec. 2.  Pursuant to sections 1104 and 1106 of the District of Columbia Government Comprehensive Merit Personnel Act of 1978, effective March 3, 1979 (D.C. Law 2-139; D.C. Official Code §§ 1-611.04 and 1-611.06), the Council approves the proposed compensation system changes recommended by the Mayor, which were transmitted May 16, 2005, to provide for a 3.5% salary increase for certain Career, Management Supervisory, and Excepted Services employees not covered by collective bargaining and which provide as follows:

**ENROLLED ORIGINAL**

Sec. 3.  The compensation system changes approved in section 2 shall become effective on July 10, 2005.

Sec. 4.  Fiscal impact statement.

The Council adopts the fiscal impact statement in the committee report as the fiscal impact statement required by section 602(c)(3) of the District of Columbia Home Rule Act, approval December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(3)).

Sec. 5.  The Secretary to the Council of the District of Columbia shall transmit a copy of this resolution, upon its adoption, to the Office of the Mayor.

Sec. 6.  This resolution shall take effect immediately.

13

**EXHIBIT 4**

**ENROLLED ORIGINAL**


A RESOLUTION

<u>16-322</u>

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

<u>October 11, 2005</u>


To approve the proposed compensation system changes submitted by the Mayor for certain
Career, Excepted, and Management Supervisory Services employees not covered by
collective bargaining.


RESOLVED, BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this
resolution may be cited as the "Career Service, Excepted Service, and Management Supervisory
Service Non-Bargaining Unit Employees Pay Equity Compensation System Changes Approval
Resolution of 2005".

Sec. 2. (a)  Pursuant to sections 1104 and 1106 of the District of Columbia Government
Comprehensive Merit Personnel Act of 1978, effective March 3, 1979 (D.C. Law 2-139; D.C.
Official Code §§ 1-611.04 and 1-611.06), the Council approves the proposed compensation
system changes recommended by the Mayor to provide for a salary increase of 4% for Career and
Management Supervisory Services employees not covered by collective bargaining and for
Excepted Service employees of the Council of the District of Columbia paid from the Career
Service general salary schedule, to reduce the salary gap between bargaining unit and non-
bargaining unit employees.
    (b)  The compensation system changes approved in this resolution are not applicable to:
        (1)  Excepted Service employees other than those described in subsection (a) of
this section;
        (2)  Legal Service employees, including employees in the Senior Executive
Attorney Service;
        (3)  Uniformed members of the Metropolitan Police Department and the Fire and
Emergency Medical Services Department;
        (4)  Employees of the Office of the Chief Financial Officer not covered by
collective bargaining;
        (5)  Employees of the District of Columbia Public Schools;
        (6)  Employees of the University of the District of Columbia; and
        (7)  Employees of the Department of Mental Health.

Sec. 3.  The salary schedules approved in section 2 (a) are approved as follows:

**ENROLLED ORIGINAL**

Sec. 4.  Applicability.

The compensation system changes approved by sections 2 and 3 shall become effective on October 2, 2005.

Sec.  5.  Fiscal impact statement.

The Council adopts the fiscal impact statement in the committee report as the fiscal impact statement required by section 602(c)(3) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(3)).

Sec. 6.  The Secretary to the Council of the District of Columbia shall transmit a copy of this resolution, upon its adoption, to the Office of the Mayor.

Sec. 7.  This resolution shall take effect immediately.

EXHIBIT 5

**ENROLLED ORIGINAL**

A RESOLUTION

16-703

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

July 11, 2006

To approve the proposed compensation system changes submitted by the Mayor for certain Career Service, Legal Service, Excepted Service, and Management Supervisory Service employees not covered by collective bargaining.

RESOLVED, BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this resolution may be cited as the "Career Service, Legal Service, Excepted Service, and Management Supervisory Service Non-Collective Bargaining Unit Employees Pay Equity Compensation System Changes Approval Resolution of 2006".

Sec. 2. (a) Pursuant to sections 1104 and 1106 of the District of Columbia Government Comprehensive Merit Personnel Act of 1978, effective March 3, 1979 (D.C. Law 2-139; D.C. Official Code §§ 1-611.04 and 1-611.06), the Council approves the proposed compensation system changes recommended by the Mayor for fiscal year 2006 and fiscal year 2007 adjusting the rates of pay for some of the salary schedules applicable to non-collective bargaining unit employees in the Career, Legal, Excepted, and Management Supervisory Services, and adjusting the rates of pay and establishing a new salary schedule for certain non-collective bargaining unit employees in the Management Supervisory Service, respectively. The main purpose of the compensation system changes recommended by the Mayor is to eliminate the salary gap between collective bargaining unit and non-collective bargaining unit employees.

(b) For fiscal year 2006, the Mayor is proposing compensation system changes to the General Career Service salary schedule ("General CS Schedule"), to adjust the salaries for grade levels 1 through 14, and establish a new combined open range system for grade levels 15, 16, 17, and 18. These changes eliminate much of the pay inequity between similar positions paid under the General CS Schedule and the corresponding collective bargaining schedule and shall allow for the implementation of varying, pay-for-performance increases for Career Service employees occupying positions at grade levels 15 through 18. Further, the rates of pay for the salary schedule for Career Service nurses are being adjusted and a new Wage Service Rate Schedule shall be created. The new Wage Service Rate Schedule combines all hourly rate categories in the various services onto a single schedule and adjusts the rates of pay.

1

**ENROLLED ORIGINAL**

(c)  For fiscal year 2006, the Mayor is proposing compensation system changes for the Management Supervisory Service to establish a new Management Supervisory Service Pay Schedule ("MS Schedule") as the basic pay schedule for all so called white collar Management Supervisory Service employees. Instead of the typical 10 steps for each grade level, each grade level of the new MS Schedule has an open range with no steps, only a minimum, midpoint, and maximum as reference points of the range. The new MS Schedule shall provide for the implementation of a varying, pay-for-performance system for white collar Management Supervisory Service employees.

(d) For fiscal year 2006, the Mayor is proposing an adjustment to the rates of pay for the ES Schedule applicable to Excepted Service employees.

(e) For fiscal year 2007, the Mayor is proposing a 3% increase for Career, Excepted, and Management Supervisory Service employees.  The Mayor is proposing a 4.5% increase for the following Legal Service employees:

(1)  Legal Service attorney managers in the Senior Executive Attorney Service ("SEAS");

(2)  Non-SEAS Legal Service attorney managers in agencies other than the Office of the Attorney General for the District of Columbia ("OAG"); and

(3)  Legal Service employees, excluding SEAS employees and non-SEAS attorney managers in agencies other than the OAG not covered by collective bargaining.

(f)  The compensation system changes proposed in this resolution shall not apply to:

(1)  Legal Service employees, including employees in the SEAS, employed by the OAG;

(2)  Uniformed members of the Metropolitan Police Department;

(3) Uniformed members of the Fire and Emergency Medical Services Department;

(4)  Employees of the Office of the Chief Financial Officer;

(5)  Employees of the District of Columbia Public Schools;

(6) Employees of the University of the District of Columbia; and

(7) Employees of the Department of Mental Health.

Sec. 3. The proposed compensation system changes referred to in section 2 of this resolution are approved as follows:

2

**ENROLLED ORIGINAL**

Sec. 4.  Applicability.

The compensation changes approved in sections 2 and 3 for fiscal years 2006 and 2007 shall become effective, retroactively, on April 2, 2006, and on October 1, 2006, respectively.

Sec. 5.  Fiscal impact statement.

The Council adopts the fiscal impact statement in the committee report as the fiscal impact statement required by section 602(c)(3) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(3)).

Sec. 6. The Secretary to the Council shall transmit a copy of this resolution, upon its adoption, to the Office of the Mayor.

Sec. 7.  This resolution shall take effect immediately.

**EXHIBIT 6**

1
2                                                    _____
3                                                    Chairman Vincent C. Gray
                                                     at the request of the Mayor


4                              A PROPOSED RESOLUTION

5              _____

6                  IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

7              _____

8   Chairman Vincent C. Gray, at the request of the Mayor, introduced the following resolution
9   which was referred to the Committee on _____.


10  To approve the proposed compensation system changes submitted by the Mayor for certain
11         Career Service, Excepted Service, and Management Supervisory Service employees not
12         covered by collective bargaining.


13          RESOLVED, BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this

14  resolution may be cited as the "Career Service, Excepted Service, and Management Supervisory

15  Service Non-Collective Bargaining Unit Employees Compensation System Changes Approval

16  Resolution of 2007".


17          Sec. 2. (a)  Pursuant to sections 1104 and 1106 of the District of Columbia Government

18  Comprehensive Merit Personnel Act of 1978, effective March 3, 1979 (D.C. Law 2-139; D.C.

19  Official Code §§ 1-611.04 and 1-611.06), the Council approves the proposed compensation

20  system changes as recommended by the Mayor for fiscal year 2008, for Career Service, Excepted

21  Service, and Management Supervisory Service employees not covered by collective bargaining

22  in this resolution.

1         (b) For fiscal year 2008, the Mayor is proposing an adjustment to all the rates of

2    pay of the Non-Union General Career Service Schedule ("Non-Union General CS Schedule") for

3    "white collar" positions, and a salary increase of 3.25% for employees in positions at grade

4    levels 14 and below paid under this salary schedule.  A salary increase of 3% is being proposed

5    for Career Service nurses paid under the Non-Union Nurses Salary Schedule.  The Mayor is

6    proposing an adjustment to all the rates of pay of the Wage Service Rate Schedule for "blue

7    collar" Career and Management Supervisory Service positions; and a salary increase of 3.25%

8    for Career Service wage employees paid under this rate schedule who occupy positions in pay

9    plans "RW," "LW," and "SW."  Additionally, for Career Service wage positions in pay plans

10    "RW," LW," and "SW," the Mayor is proposing a modification to the schedule to increase the

11    number of steps from 6 to 10.  The change to a 10-step rate schedule is the same as the change

12    for Career Service wage positions in Compensation Units 1 and 2 approved by Council

13    Resolution 16-794, effective September 19, 2006.  Further, the Mayor is proposing the

14    elimination of the steps and the establishment of an open range rate system for Management

15    Supervisory Service positions in pay plan "MW" paid under the Wage Service rate Schedule.

16    Instead of the typical steps, the new rate schedule has an open range with no steps, only a

17    "minimum," "midpoint," and "maximum" as reference points of the range, and shall provide for

18    the implementation of a pay-for-performance system for "blue collar" Management Supervisory

19    Service employees.  The Mayor is also proposing a salary increase of 3.25% for Management

20    Supervisory Service wage structure.  Finally, the Mayor is proposing that the non-union salary

21    schedules previously established for the Office of Property Management and the Office of

22    Unified Communications be combined into the Non-Union General CS Schedule.

1      (c)  The Mayor is not proposing a salary increase for fiscal year 2008 for Career

2    Service employees at grade levels 15 and above paid under the open ranges of the Non-Union

3    General CS Schedule.  These employees are eligible to receive merit-pay increases every year

4    based on their annual performance evaluation rating.

5      (d)  The Mayor is not proposing any salary structure adjustments to the

6    Management Supervisory Service Salary Schedule ("MS Schedule") or to the Excepted Service

7    Salary Schedule ("ES Schedule") for fiscal year 2008.  Employees paid under the MS Schedule

8    or the ES Schedule are eligible to receive merit-pay increases every year based on their annual

9    performance evaluation rating.

10      (e) The compensation system changes proposed in this resolution shall not apply

11    to the following employees: any Legal Service attorney; officers and members of the

12    Metropolitan Police Department and the Fire and Emergency Medical Services Department;

13    employees of the Office of the Chief Financial Officer; employees of the District of Columbia

14    Board of Education; employees of the Board of Trustees of the University of the District of

15    Columbia; employees of the Child and Family Services Agency; and employees of the

16    Department of Mental Health.

17    Sec. 3. The proposed compensation system changes referred to in section 2 of this

18    resolution are approved as follows:

1          Sec. 4. Effective date.

2    The compensation system changes delineated in section 3, for fiscal year 2007, shall become

3    effective on October 14, 2007.

4          Sec. 5. Fiscal impact statement.

5    The Council adopts the fiscal impact statement in the committee report as the fiscal

6    impact statement required by section 602 (c)(3) of the District of Columbia Home Rule Act,

7    approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02 (c)(3)).

8          Sec. 6. The Secretary to the Council of the District of Columbia shall transmit a copy of

9    this resolution, upon its adoption, to the Office of the Mayor.

10          Sec. 7. This resolution shall take effect immediately.

9

**EXHIBIT 7**



# Government of the District of Columbia
## Office of Risk Management
### Risk Financing Division

Kelly Valentine –
Interim Chief Risk Officer

July 28, 2006

**ZPK &W**

**'AUG  4 2006**

**RECEIVED**

Ms. Ingrid F. Coney
Zwerdling Leibig Kahn & Wolly
1025 Connecticut Avenue, NW
Suite 712
Washington, DC 20036

### VIA FACSIMILE & FIRST CLASS MAIL

RE:    Freedom of Information Act Request Seeking Information Pertaining to Disability
Compensation Program/Organizational Hierarchy—FOIA 07-0606

Dear Ms. Coney:

On July 6, 2006, you sent a Freedom of Information Act ("FOIA") to the Office of Risk
Management ("ORM") which was received by me on July 7, 206, seeking a description of each
agency's organizational hierarchy and, for each year between 2002 and the present, provide the
number of individuals who have received disability compensation according to each agency's
organization hierarchy.

On July 25, 2006, you were advised that the District Government consists of more than 135
department/agencies.  This number increases as each level within the departments and agencies
is captured.  Please note that a department/agency may have only 1 level, or as many as 25
levels.  Example--In alpha order, inclusive of the Office of the District of Columbia Auditor and
ending with Department of Parks and Recreation there are more than 230 organizational levels,
which is only a fraction of what you have requested.  As such, a request to narrow your search
was made.  The request for information was further limited to those who have received biweekly
indemnity checks since 2002.

In reply to your request, claim records we were searched and records extracted for claimants who
received disability compensation benefits between 2002 and the present.  Information was
captured according to the claim type (lost time and medical only) and the agency organizational
hierarchy.   From this group of records, lost time records which met the criteria were captured.  .

In 2003 the Office of Risk Management upgraded to a new claims management system.  During
the upgrade only open claims were converted to the new system.  Claims that were closed in
2002 and 2003 prior to the upgrade remained in the old system.  The "old" system is limited to
reporting at the Agency/Department Level only.  As such, claims closed prior to the conversion
do not include the Divisions.  These worksheets are labeled "2002 agency only" and "2003
agency only".

The figures in the "agency only" worksheets should be added to the yearly totals respectively.

For claims closed in 2002, prior to the system upgrade, there were twenty-nine (29) agencies and three hundred ninety-six (**396**) individuals who received disability compensation. Additionally, in 2002, there were thirty-eight (38) divisions across twenty-one (21) different departments and agencies, and one hundred twenty-four (**124**) individuals who received disability compensation. For claims closed in 2003 prior to the system upgrade, there were thirty-five (35) agencies and five hundred seventy-eight (**578**) individuals who received disability compensation benefits. Additionally, in 2003, there were forty-nine (54) divisions across twenty-six (26) different departments and agencies, and two hundred-fifty (**250**) individuals who received disability compensation. In 2004, there were sixty-nine (69) divisions across twenty-seven (27) different departments and agencies, and six hundred thirty-two (**632**) individuals who received disability compensation. In 2005, there were seventy-two (72) divisions across thirty-four (34) different departments and agencies, and seven hundred and six (**706**) individuals who received disability compensation. And in 2006 to date, there are seventy-five (75) divisions across thirty-four (34) different departments and agencies, and five hundred twenty-eight (**528**) individuals who have or are currently receiving disability compensation.

You may either inspect or request a copy of the records to which you are entitled. As previously advised FOIA permits public bodies to charge requesters specified fees based on the category of the request. Public bodies may charge search, review and duplication cost for commercial requests; duplication costs for requests from representatives of the media and requests from educational and scientific organizations; and search and duplication costs for all other requests. I have determined your request to be all commercial since you are seeking this information on behalf of a commercial entity. Thus, the DC Office of Risk Management (DCORM) may charge search, review and duplications fees.

The search fee is calculated based upon the number of quarter hours that ORM personnel expended searching for records responsive to your request. A search performed by clerical personnel is charged at a rate of $4.00 per quarter hour; a search performed by professional personnel is charged at a rate of $7.00 per quarter hour; and a search performed by supervisory personnel is charged at a rate of $10.00 per quarter hour. The first hour of searching for a request is free. 1 DCMR § 408.1. One professional employee expended 1 hour searching for responsive records. One supervisory personnel expended 2 hours searching for responsive records. Therefore, the search fee is $14.00 [$4 x (4 qtr hrs. x .25)] + [$10 x (4qtr hrs. x .25)]; therefore, the search fee is $14.00.

The review fee is calculated based upon the number of quarter hours that ORM personnel expended reviewing each page of records to determine whether the record was subject to an exemption and/or redacting exempt information. A review performed by clerical personnel is charged at a rate of $4.00 per quarter hour; a review performed by professional personnel is charged at a rate of $7.00 per quarter hour and a review performed by supervisory personnel is charged at a rate of $10.00 per quarter hour. The first hour of review is free. Since your request was narrow and specific, a review to determine whether an exemption applies was not needed. Therefore, the review fee is $0.

The fee for duplicating the non-exempt, responsive records is $.25 per page. 1 DCMR § 408.1(c). ORM created the reports and there are 26 pages of responsive records in this series. Therefore, the duplication fee is $6.50 (26 x .25 = $6.50).

The total cost for search, review and reproduction is $20.50 ($14.00 + $0.00 + $6.50 = $20.50). Prior to the discovery of the system limitations, which resulted in additional search costs, ORM had determined that the fees were limited to reproduction charges, and thus advised you that the fees were waived. Therefore, the responsive records at attached at no cost.

If you deem this response to be a denial of your request, you have the right to appeal to the Mayor, or you may seek judicial review in the Superior Court, pursuant to D.C. Official Code § 2-537 (2001) and 1 D.C.M.R. § 412. If you elect to appeal to the Mayor, your appeal should be in writing, should include a statement of the arguments, circumstances, or reasons in support of the information sought by your request, should include copies of your original FOIA request and of the agency's written denial letter issued to you, and should reflect that you have served a copy of your appeal on the agency.

Sincerely,

KELLY VALENTINE
Interim Chief Risk Officer

BY: _____
MIA POWELL LILEY
Freedom of Information Act Officer

cc: Karen Sheppard, DCORM

**EXHIBIT 8**

**Jeff Burritt**

| | |
|---|---|
| **From:** | Rupert, Michael (DCOP) [Michael.Rupert@dc.gov] |
| **Sent:** | Monday, December 11, 2006 5:03 PM |
| **To:** | Jeff Burritt |
| **Subject:** | Ask the DCOP Director |

Mr. Zwerdling,
    Thank you for contacting the DC Office of Personnel. The District employs
approximately 33,000 people - including approximately 12,000 DC Public Schools employees.
Because DCPS is an independent agency, however, we do not have union statistics for that
agency. Of the remaining 21,000 employees, approximately 50 percent are in various
collective bargaining units. Thank you again for your question.

Michael Rupert
Public Information Officer
DC Office of Personnel (DCOP)
202 442 9647
202 374 9793
michael.rupert@dc.gov

STATEMENT OF CONFIDENTIALITY The information contained in this electronic message and any
attachments to it are intended for the exclusive use of the
addressee(s) and may contain confidential or privileged information. If you are not the
intended recipient, please notify the sender immediately and destroy all copies of this
message and any attachments.

**EXHIBIT 9**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| **CHERYL JONES, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 1:07-cv-01206 (EGS)** |
| | ) |
| **THE DISTRICT OF COLUMBIA, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

_____

## DECLARATION OF WENDY L. KAHN

I, Wendy L. Kahn, declare under penalty of perjury that the following is true and correct:

1.      I have been practicing law since 1973, first in the general counsel's office of the American Federation of State, County, and Municipal employees, and then as an associate and then partner in the law firm presently named Zwerdling, Paul, Kahn & Wolly, P.C.  I, as well as the other members of the firm, specialize in the practice of labor and employment law.

2.      I graduated from the New York University School of Law in 1973.  I am admitted to practice in numerous federal courts, including the United States Supreme Court, and the United States Courts of Appeals for the District of Columbia, as well as the Fourth, Fifth, Sixth, Ninth Circuits, and numerous federal district courts, including in the District of Columbia, and Maryland.  I have been admitted to practice before the District of Columbia Court of Appeals and the Maryland Court of Appeals.

3.      I have served as counsel of record in a number of cases filed as class actions: Bowman v. Stumbo, 735 F.2d 192 (6th Cir. 1984); Bergmann, et al. v.

University of Maryland, C.A. Nos. H85-446 and H86-445 (D.Md.); Lyng v. International Union, UAW, 485 U.S. 360 (1988), rev'g 651 F.Supp. 855 (D.D.C. 1986); UAW v. Brock, C.A. 86-0300 (D.D.C.); Baker, et al. v. Reich, C.A. 95-1262 (D.D.C.).  I served as counsel for numerous individual class members in the relief aspects of Chewning v. Seamans, 471 F.Supp. 767 (D.D.C. 1979), 26 FEP Cases 731 (D.D.C. 1979), 28 FEP Cases 1735 (D.D.C. 1980); and, on remand from the D.C. Circuit, served as counsel for the ten (10) employees allegedly fired by Chief Financial Officer Anthony Williams for their union activity in District Council 20, et al. v. District of Columbia, et al., C.A. 1:97-cv-00185 (D.D.C.)(EGS).

5.      I have also served as lead counsel representing D.C. public employees, as well as unions representing D.C. public employees, in federal and local litigation, before administrative bodies including the District of Columbia Public Employee Labor Relations Board, and in arbitration.

6.      I have previously served as the union and employee co-chair of the Committee on State and Local Government Bargaining and Employment Law of the ABA's Section on Labor and Employment Law (LEL), and am currently a member of the Council of the LEL Section.  I was inducted as a fellow into The College of Labor and Employment Law, Inc., in 2003.


Dated:  September 27, 2007        /s/ Wendy L. Kahn
                                  Wendy L. Kahn

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| **CHERYL JONES, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )     **Civil Action No. 1:07-cv-01206 (EGS)** |
| | ) |
| **THE DISTRICT OF COLUMBIA, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

_____

## ORDER

Upon consideration of Plaintiff's Motion for Class Certification,

WHEREFORE, Plaintiffs have established that a class exists; and

WHEREFORE, Plaintiffs have established that the prerequisites of FRCP Rule 23(a) are present; and

WHEREFORE, Plaintiffs have established that a class action is maintainable under Rule 23(b)(2); it is hereby

**ORDERED** that Plaintiff's Motion for Class Certification is GRANTED; and it is further

**ORDERED** that pursuant to FRCP Rule 23(b)(2), this action shall proceed as a class action, with Plaintiff's counsel of record appointed as class counsel, on behalf of the following class:

> All persons who have received, are receiving, or will receive disability compensation benefits under the District of Columbia's Disability Compensation Program, D.C. Code § 1-623.01, et. seq., or its predecessor, who were employed in a bargaining unit position at the time the person was injured and whose compensation benefits were not increased when increases in compensation were granted by the District of Columbia pursuant to D.C. Code §§ 1-611.05 and 1-611.06.

_____
Emmet G. Sullivan
U.S. District Court Judge

**Copies To:**

Daniel A. Rezneck
Senior Assistant Attorney General
For the District of Columbia
441 Fourth St., N.W., 6th Floor. So.
Washington, D.C. 20001.

Wendy L. Kahn
Zwerdling, Paul, Kahn & Wolly, P.C.
1025 Connecticut Ave., N.W., Suite 712
Washington, D.C. 20036